UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO GONZALEZ GOMEZ,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:23-cv-00530-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §405(g)<br><br>(Doc. 17) |

Plaintiff Ricardo Gonzalez Gomez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 13, "AR") and the parties' briefs (Docs. 17, 21), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

## I. BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

On September 10, 2020, Plaintiff filed applications for disability, disability insurance benefits, and supplemental security income with an alleged disability onset date of March 2, 2019.

[1] On April 18, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned. (Doc. 10).

(AR 15). Plaintiff's claim was initially denied on March 1, 2021, and again upon reconsideration on May 21, 2021. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on May 27, 2021. *Id.* Theodore Kim, the Administrative Law Judge ("ALJ"), held an online video hearing on January 18, 2022, during which Plaintiff, with representation by non-attorney Nicholas Martinez, and impartial vocational expert William T. Cody testified. *Id.* The ALJ issued an unfavorable decision on February 11, 2022, finding Plaintiff was not disabled. (AR 12, 17-27). The Appeals Council denied Plaintiff's request for review on February 8, 2023, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a). (AR 17-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2, 2019, the alleged onset date. (AR 17).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: obesity; spastic hemiplegia; DDD lumbar spine with spondylosis; congenital hydrocephalus; monoplegia bilateral lower extremities; border line intellectual functioning; and spina bifida. (AR 18).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). The ALJ considered the effect Plaintiff's obesity has on each of his other impairments and concluded that Plaintiff does not equal any of the applicable listings. The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] Because Plaintiff's mental impairments did not cause at least two "marked"

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a plaintiff has in each of the

limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 18-19). The ALJ also found that the evidence in this case fails to establish the presence of "paragraph C" criteria.[3] (AR 19).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except for the following non-exertional limitations:

> [Plaintiff] can occasionally push or pull or operate foot controls with both lower extremities. He can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the SCO, and can occasionally climb stairs and ramps. He can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. He can tolerate occasional exposure to vibration. In addition, he is able to understand, carry-out, and remember simple instructions, and make simple work-related decisions. He will be off task 10% of the workdays.

(AR 19).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1520c. *Id.* The ALJ acknowledged that Plaintiff is "an adult man who alleges he is unable to work due to his physical and mental impairments" and that Plaintiff has testified "that due to his congenital conditions, he was unable to stand for [a] long period of time[,] … [that] he had coordination and balance issues[,]" was more prone to accidents, uses leg braces, his legs go numb after sitting for more than 20 minutes, had issues remembering to do things, and was unable to find employment despite finishing an eight-month program to become a medical assistant. (AR 20).

Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably

---

four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.*

[3] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id.* at subsection (C)(2).

be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record. (AR 20). The ALJ noted that the RFC assessment accounts for Plaintiff's obesity by limiting him to work at the sedentary exertional level with the assessed postural, manipulative, and environmental limitations. (AR 21-22). The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment notes, activities of daily living ("ADLs"), prior administrative medical findings, and third-party function report of Plaintiff's mother, determined that the record does not support limitations that would prevent him from working within the RFC. (AR 20-25). The ALJ concluded that the assessed RFC is supported by the evidence and that the RFC is consistent with the medical record as a whole. (AR 25). The ALJ acknowledged that the RFC takes into consideration the combined effect of all of Plaintiff's pain and side effects from medication as well as his borderline intellectual functioning in limiting Plaintiff to understanding, carrying out, and remembering simple instructions and making simple work-related decisions, and acknowledging that he will be off taste 10% of the workday. *Id.*

At step four, the ALJ determined that Plaintiff has no past relevant work and that transferability of job skills is not an issue. (AR 25) (citing 20 C.F.R. §§ 404.1565, 404.1568). The ALJ found that Plaintiff was a younger individual age 18-44 on the alleged disability onset date and had at least a high school education. *Id.* (citing 20 C.F.R. §§ 404.1563, 404.5164).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 26). The ALJ cited assembler, inspector, and hand trimmer based on the testimony of the vocational expert. (AR 26-27). The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from March 2, 2019, through the date of the decision. (AR 27).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. <u>LEGAL STANDARD</u>

A district court's review of a final decision of the Commissioner of Social Security is

governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III. ISSUES AND ANALYSIS[4]

Plaintiff seeks judicial review of the Commissioner's final decision denying his application and raises two issues:

1. Whether the ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations; and
2. Whether the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer any reason for rejecting Plaintiff's subjective complaints.

(Doc. 17 at 3).

### A. Whether the ALJ Failed to Properly Evaluate the Medical Opinions of Record

#### 1. Parties' Contentions

Plaintiff contends the ALJ failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations. (Doc. 17 at 6). Plaintiff argues the ALJ improperly discounted the medical opinion of his treating neurologist, Rodrigo De Zubiria, M.D., in finding the opinion unpersuasive without providing a legally sufficient explanation for that

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

assessment. *Id.* at 7-9.

Defendant contends that the ALJ properly determined that the opinion of treating neurologist Dr. De Zubiria concerning Plaintiff's work limitations was unsupported and inconsistent with the record. (Doc. 21 at 2). Defendant argues that the ALJ properly found the opinion lacked supportability because "no medical evidence was provided to support" the assessed work restrictions, such as data, citation to relevant evidence, or supporting explanations. *Id.* at 8. Defendant further asserts the ALJ identified three specific items of medical evidence showing the opinion was not consistent with the record, including to Plaintiff's "mild" spinal imaging, treatment with orthotics, and ability to ambulate without an assisted device. *Id.* at 9-11.

2. Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are

supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

3. <u>Dr. Rodrigo De Zubiria's Opinion</u>

On August 9, 2021, Dr. De Zubiria submitted a physical medical source statement regarding Plaintiff. (AR 623-626). Dr. De Zubiria noted that Plaintiff was not currently medicated and that as a result of his impairments and estimated that Plaintiff is "unable to function in competitive work." (AR 623). Dr. De Zubiria assessed Plaintiff is able to sit more than two hours and stand for 30 minutes at one time and specifically noted the following in his evaluation: Plaintiff can stand/walk for less than two hours and sit for at least six hours; does not need a job that permits shifting positions at will from sitting, standing, or walking; does not need to include periods of walking around during an eight-hour workday; may sometimes need to take unscheduled breaks

during a workday; does not need to have his legs elevated with prolonged sitting; and must use a cane or other assistive device to stand and walk because it is medically necessary and due to symptoms of imbalance, insecurity, and weakness. (AR 624). Dr. De Zubiria assessed other limitations, including that Plaintiff: rarely can lift and carry in a competitive work situation less than 10 pounds, but frequently more than 10, 20, and 50 pounds; can never twist, stoop (bend), crouch/squat, climb stairs or ladders; has significant limitations with reaching, handling, or fingering while noting that Plaintiff has "100%" functioning of both hands, fingers, and arms; is 25% or more likely to be "off task" at work; is incapable of even low stress work due to "severe mobility impairment"; that Plaintiff's impairments are likely to produce "good" and "bad" days; and that he likely will be absent from work as a result of the impairments or treatment more than four days per month. (AR 625-626). Dr. De Zubiria noted that Plaintiff has other limitations of a congenital condition which has resulted in "moderate to severe physical and mental impairments." (AR 626).

On October 11, 2021, Dr. De Zubiria submitted a follow-up physical medical source statement. (AR 627-630). He noted Plaintiff is "not in pain," is "intellectually challenged" with "impaired mobility," and that he anticipates a neurology evaluation of Plaintiff. (AR 627). Dr. De Zubiria's assessment differed from the findings of his previous medical source statement in several respects, including: no assessment whether Plaintiff needs to take unscheduled breaks during a working day; that Plaintiff need not use a cane or other hand-held assistive device to walk; can occasionally lift and carry 10 pounds but never 20 to 50 pounds; can occasionally twist, stoop (bend), crouch/squat, climb stairs or ladders; does not have significant limitations with reaching, handling or fingering; and is incapable of low stress work because he is "intellectually challenged." (AR 628-629). Dr. De Zubiria also estimated Plaintiff is likely to be absent from work and unable to complete an eight-hour workday at least five days or more per month as a result of his physical and/or mental impairments. (AR 634).

4. <u>Analysis</u>

The ALJ found the August 2021 and October 2021 opinions of state medical consultant Dr. De Zubiria of limited persuasiveness, noting that no medical evidence was identified to Dr.

Zubiria's assessment of extreme restrictions—that Plaintiff is only "able to sit, stand, or walk for less than [two] hours a day," takes "breaks every [30] minutes[,]" that Plaintiff "would miss more than five days of work per month"—and that "the record as a whole demonstrates [Plaintiff] has greater than the extreme limitations presented in these assessments allow." (AR 23) (citing Exs. 13F, 14F, 15F). The ALJ noted that Dr. De Zubiria opined in two physical medical source statements that Plaintiff could sit for more than two hours and stand for 30 minutes and stand/walk for less than two hours. *Id.* The ALJ further noted that Plaintiff's spinal imaging is mild, his congenital hydrocephalus and balance problems are treated with orthotics, and that Plaintiff ambulates without bracing and has no use for a cane or walker. *Id.* (citing Exs. 1F, 3F, 7F, 13F). The ALJ found that Dr. De Zubiria's opinions effectively find that Plaintiff is currently disabled because he would miss work more than four days per month but noted that such a finding of disability is an administrative finding dispositive of the case that requires familiarity with the SSR and is properly an issue reserved for the Commissioner rather than the state medical consultant. (AR 23-24).

Here, the ALJ appropriately considered the supportability and consistency of Dr. De Zubiria's opinion in discounting the opinion and assessed limitations as unpersuasive. As to supportability, Dr. De Zubiria acknowledged that Plaintiff is "not currently medicated" and has a "well-documented congenital condition" which "has resulted in moderate to severe and mental impairments" and which "preclude him from" employment. *See* (AR 623, 626, 630). However, Dr. De Zubiria did not acknowledge or reference any other objective medical evidence in the record in either his August 2021 or October 2021 physical medical source statements of Plaintiff. The ALJ noted that Dr. De Zubiria opined that Plaintiff could sit for more than two hours and stand for thirty minutes and stand/walk for less than two hours but that he assessed "extreme restrictions, such as only being able to sit, stand, or walk for less than [two] hours a day, taking breaks every thirty minutes" and that Plaintiff would miss work four or more days a month without reference or supporting explanation from any record evidence. (AR 23) (citing Ex. 13F). The ALJ therefore permissibly reasoned that the opinion was not tethered to any consideration or acknowledgment of other objective medical evidence in the record to support the assessed limitations. *See Woods*, 32

F.4th at 791-92. Further, the ALJ explained that Dr. De Zubiria's opinions—including of limitations to sitting, standing, or walking for less than two hours a day—were unsupported by the examination findings by referencing to findings which showed that Plaintiff's balance issues were treated in the past with orthotics and that he is able to ambulate without need of assistive ambulatory devices. *See* (AR 486 [February 13, 2017, outpatient visit assessment by Dr. Joerg Schuller], 513-517 [September 26, 2019, internal medicine evaluation by Dr. Roger Wagner], 586 [August 31, 2020, orthopedic and physical therapy assessment showing walking and balance issues and good rehab potential]). Indeed, Dr. De Zubiria's observation in his October 2021 statement that Plaintiff is "not in pain" and does not require any assistive ambulatory device inexplicably contradicts or at least undermines the opinion as to the walking and standing limitations. Therefore, the ALJ properly concluded that these findings did not support the assessed limitations. *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion *by explaining the relevant objective medical evidence*.") (emphasis added).

The ALJ likewise properly considered the consistency of Dr. De Zubiria's opinion in relation to the rest of the medical evidence and permissibly discounted the opinion for its lack of consistency. First, the ALJ noted that the opinion was internally inconsistent insofar as Dr. De Zubiria opined that Plaintiff could sit for more than two hours and stand for more than 30 minutes, but also imposed a restriction to sit/stand/walk for less than two hours per day. (AR 23); *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (contradiction between physician's opinion and treatment notes satisfies "specific and legitimate reason" standard for rejecting opinion). Second, the ALJ relied on record evidence that cast doubt on the need for the significant restrictions assessed by Dr. Zubiria, including that spinal imaging revealed only that Plaintiff experienced "mild" back problems, that his issues were adequately managed with orthotics, and that he "has no use for a cane or walker." (AR 23).

Therefore, the ALJ properly addressed how he considered the supportability and consistency of Dr. De Zubiria's opinions in finding the opinion unpersuasive. *See Woods*, 32 F. 4th at 791-92.[5]

---

[5] Any error by the ALJ in disregarding Dr. De Zubiria's opinion that Plaintiff likely would

**B. Whether the ALJ Failed to Include Work-Related Limitations in the RFC Consistent with Plaintiff's Limitations and Impermissibly Rejected His Subjective Symptom Testimony**

1. Parties' Contentions

Plaintiff contends the ALJ failed to provide a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony. (Doc. 17 at 12). Plaintiff asserts the ALJ's "general summary of evidence" is insufficient as it fails to clarify the ALJ's reasoning as to what record evidence undermined what specific portions of Plaintiff's testimony. *Id.* at 12-13.

Defendant argues that the ALJ adequately articulated that Plaintiff's alleged symptoms were contradicted by his medical record and activities of daily living such that the Court should uphold the ALJ's decision. (Doc. 21 at 2).

2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

---

be absent from work more than four days per month as a result of his impairments or treatment is harmless given the Court's finding that the ALJ properly discounted his opinion on other, permissible grounds. *See Tommasetti*, 533 F.3d at 1038 (holding that harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (citation and quotation omitted).

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

---

[6] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility" assessment when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g*., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

3. <u>Analysis</u>

The ALJ found that Plaintiff's severe impairments— obesity, spastic hemiplegia, DDD lumbar spine with spondylosis, congenital hydrocephalus, monoplegia bilateral lower extremities,

border line intellectual functioning, and spina bifida— significantly limit him from performing basic work activities. (AR 18). The ALJ, without citation to the record, summarized Plaintiff's subjective symptom testimony: "[Plaintiff] is an adult man who alleges he is unable to work due to his physical and mental impairments. [He] testified that due to his congenital conditions, he was unable to stand for long period of time and he had coordination and balance issues. He was more prone to accidents. He uses leg braces. His legs go number after sitting for more than [20] minutes. He has issues remembering to do things. He went to school to be a medical assistant and finished the eight-month program, but was unable to find employment." (AR 20); *see* (AR 40-47). After finding that Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record. *Id.*; *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why.").

*a. The ALJ's summary of the record evidence is not a clear and convincing reason to reject Plaintiff's symptomology testimony.*

Notably, in the decision, the ALJ did not cite to or address specifically any portion of Plaintiff's hearing testimony. Throughout the hearing, Plaintiff provided several accounts of his pain and symptoms, none of which was addressed by the ALJ in the decision. For example, at the hearing, Plaintiff testified that he cannot "really be on foot for more [than] a normal eight-hour shift because" he has "coordination problems" and a balance issue that, after time, tires him, makes him clumsier, and more prone to accidents. (AR 41). He testified that he uses leg braces to help him walk, which he can only do for about ten minutes before he usually slows down. (AR 41-42). As to memory issues, he testified that he needs to be reminded about three times a day of how to do different tasks at work. (AR 44).

In the decision, the ALJ necessarily rejected Plaintiff's testimony regarding his physical and mental impairments in noting that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence *and other*

*evidence in the record* for the reasons explained in this decision" (AR 20) (emphasis added), despite failing to identify *what* testimony he rejected and why. Although the ALJ summarizes Plaintiff's treatment notes and medical evidence concerning his impairments, nowhere in the decision does the ALJ explain how or otherwise identify what of Plaintiff's testimony is inconsistent with the record evidence sufficient to discount that testimony. *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (although the ALJ provided a relatively detailed overview of Lambert's medical history, "providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the [plaintiff's] symptom testimony not credible.") (citing *Brown-Hunter*, 806 F.3d at 493-94). Where a plaintiff presents medical evidence of a disabling condition "along with his testimony during the hearing regarding his symptoms, … [this] establishes for the ALJ a duty to discuss Plaintiff's impairments and resulting subjective symptom testimony and, if the ALJ finds such testimony should be rejected, the ALJ must describe his reasons with specificity under the relevant clear and convincing standard." *Carr v. Kijakazi*, No. 1:21-cv-01021-CDB (SS), 2025 WL 240821, at *8 (E.D. Cal. Jan. 17, 2025). "While the Court may be able to draw inferences about what testimony may be inconsistent, the ALJ must identify those inconsistencies with specificity." *Id.* at *9 (citing *Lambert*, 980 F.3d at 1278).

Here, the ALJ erred when he necessarily rejected Plaintiff's testimony about his pain and memory issues without identifying specific testimony rejected sufficient to permit the Court to discern the bases for the ALJ's rejection. *Burch*, 400 F.3d at 680 (holding an ALJ "must specify what testimony is not credible and identify the evidence that undermines" it). The ALJ failed to abide by the very regulatory provisions he cited in addressing the governing standard for weighing the evidence, 20 C.F.R. 404.1529 and SSR 16-3P (*see* AR 21), which provides: "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. <u>We will consider all of your statements about your symptoms</u>, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work." 20 C.F.R. 404.1529 (emphasis added); *see* SSR 16-3P ("Our adjudicators must base their findings solely on the evidence in the

case record, including any testimony from the individual or other witnesses at a hearing"). Because there is no record that the ALJ meaningfully considered or identified any of Plaintiff's testimony in discounting Plaintiff's allegations of disabling physical and mental limitations, the ALJ failed to meet the clear and convincing evidentiary standard.

` *b. Plaintiff's activities of daily living do not provide a clear and convincing reason to reject his symptomology testimony.*

An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the plaintiff's activities of daily living. *Tommasetti*, 533 F.3d at 1039. Specifically, in discounting a plaintiff's credibility, an ALJ properly may rely on ADLs: (1) when daily activities demonstrate the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's testimony as to the degree of functional limitation. *Orn*, 495 F.3d at 639. However, "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). "The mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]" *Webb*, 433 F.3d at 688 (quoting *Vertigan*, 260 F.3d at 1050).

Here, the ALJ considered and relied on Plaintiff's activities of daily living and that he was able to complete them all despite having "no driver's license" including using his phone, playing video games, reading, being outdoors, watching TV and videos, cooking, cleaning, shopping, and walking to work. (AR 22). The ALJ determined that the findings are consistent with the RFC as assessed but do not support the extent of his subjective complaints and there is no record evidence that contradicts the RFC or indicates need for additional restrictions. (AR 25). In evaluating the severity of Plaintiff's mental impairments considering the "paragraph B" criteria, the ALJ found that Plaintiff's activities demonstrates that "his difficult[ies]" in understanding, remembering, or applying information "is no more than moderate" and in adapting or managing oneself is "no more than mild." (AR 18-19).

However, in rejecting Plaintiff's testimony, the ALJ simply recited a list of ADLs from the record which he believed indicates Plaintiff has a higher degree of functioning than alleged and demonstrates that Plaintiff can perform work activities. The ALJ failed to adequately explain how Plaintiff's described ADLs conflict with his claimed limitations or demonstrate an ability to function in the workplace. Plaintiff's intermittent engagement in these activities does not undermine his claim that he is unable to sustain work. Nor is the undersigned persuaded that it is inconsistent that Plaintiff at times can perform general household activities, cook, read, watch TV, play video games, and walk to work in the past while claiming he had difficulty in "remembering to do things" and experienced pain while walking. *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639 ("The [Act] does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits.").

Nor does the ALJ show how these occasional activities equate to transferable work skills. Activities such as shopping, household chores, or watching TV or playing video games does not render him able to work, and the ALJ fails to show how Plaintiff's occasional activities equate to transferable work skills. *See, e.g., Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate with an ability to work."). Thus, the undersigned cannot ascertain which of Plaintiff's symptomology testimony the ALJ rejected based on ADL evidence, or why. *See, e.g., Isis A. v. Saul*, No. 18-cv-01728-W-MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug. 5, 2019) ("Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.") (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

For these reasons, the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's physical and mental health symptom testimony when he failed to explain how those ADLs either contradicted Plaintiff's testimony or equaled transferable work skills.

* * * * *

In sum, the ALJ failed to identify which subjective symptomology testimony he found not credible, and why, and this Court lacks any bases to conclude that the ALJ adequately considered

Plaintiff's testimony. The resulting error is not harmless. *Lambert*, 980 F.3d at 1278 (citing *Brown-Hunter*, 806 F.3d at 494).

**C. Remedy**

Plaintiff requests this case be remanded for further proceedings and a new decision. (Doc. 17 at 12-13). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).

In this case, the ALJ erred by failing to consider or identify any of Plaintiff's subjective symptom testimony in discounting his allegations. Given these errors, the Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

**IV. <u>CONCLUSION AND ORDER</u>**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is GRANTED;
2. The ALJ's decision (Doc. 13) is REVERSED;
3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and
4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Ricardo Gonzalez Gomez and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 27, 2026**

UNITED STATES MAGISTRATE JUDGE